UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

UNITED STATES OF AMERICA

Plaintiff,

v.

DWIGHT LEE THOMAS,

Defendant.

Case No. 1:25-cr-00194-AKB

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is the Government's Notice of Intent to Admit "'Other Act' Evidence and Motion in Limine to Admit the Evidence (Dkt. 39) and Defendant Dwight Lee Thomas's Motion to Suppress (Dkt. 60) and Motion to Sever Counts Five and Six and Bifurcate Counts Seven and Eight (Dkt. 61). The parties presented oral argument August 20, 2026, and the Court issued rulings on the motions to suppress and sever and bifurcate from the bench (Dkt. 75). The Court also shared its preliminary views regarding the Government's 404(b) evidence. This written decision memorializes the Court's oral rulings and resolves the remaining motion. For the reasons explained below, the Court grants the Government's motion in part, denies it in part, and reserves it in part; denies the motion to suppress; and grants the motion to sever and bifurcate in part and denies it in part.

## I. BACKGROUND

### A. Law Enforcement Investigation and June 16 Assault

According to the Government's proffer, on the evening of June 16, 2025, Stephanie Zody and her two young sons were walking from their home on the Duck Valley Indian Reservation (DVIR) to a nearby neighbor's house to obtain a ride to the grocery store (Dkt. 39 at 2–3). Zody

lived at the home with her mother, Dorothy Egan, and stepfather, Laffe Healy (*id.* at 3). As Zody and her children reached the end of the driveway, Thomas, with whom Zody had been in a romantic relationship for approximately eight months, drove toward the residence (*id.*). Thomas offered Zody and her children a ride, but she declined (*id.*). Thomas then parked his truck, approached Zody, and an argument ensued (*id.*). The Government alleges that Thomas grabbed Zody by the neck; threw her against a vehicle, causing her to cut her chin; and then pulled out a black 9mm handgun (*id.*). During the ensuing struggle, Thomas allegedly fired the handgun, shattering the vehicle's window and striking Zody in the back (*id.*).

After the shooting, Thomas purportedly gave Zody the handgun and asked her to shoot him (*id.*). When Zody refused and told Thomas that the police were coming, she threw the firearm away, and Thomas ran after it (*id.*). Thomas then blocked Zody and her children from leaving before returning to his truck and driving away (*id.*). Zody recovered an expended 9mm casing, photographed the scene, and told Healy that she would call the police (*id.* at 3–4). She then went to a neighbor's house, where the neighbor observed blood on her back (*id.* at 4). Zody was later transported to the police station where she met with Bureau of Indian Affairs (BIA) Officer Randy Guratosky (*id.*). She was ultimately airlifted to Boise for treatment (*id.*).

BIA Officer Mitchell Bacon located Thomas thereafter and arrested him (*id.* at 4–5). During a search of the vehicle in which Thomas was a passenger, officers recovered a Remington Model 1100 shotgun, a Raven MP-25 .25-caliber handgun, and 9mm ammunition (Dkt. 21).

On June 24, 2025, a grand jury indicted Thomas on four counts arising from the June 16 incident (Dkt. 21). Count One charges assault with a dangerous weapon, a 9mm handgun, with intent to do bodily harm, in violation of 18 U.S.C. §§ 113(a)(3) and 1153; Count Two charges knowingly discharging the handgun in furtherance of that crime, in violation of 18 U.S.C.

§ 924(c)(1)(A); Count Three charges assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 113(a)(6) and 1153; and Count Four charges assault of an intimate partner by strangulation or suffocation, in violation of 18 U.S.C. §§ 113(a)(8) and 1153 (Dkt. 21 at 1–2).

**B. Further Investigation and Superseding Indictment**

The Government's review of Thomas's criminal history revealed three prior misdemeanor domestic-violence convictions involving two separate victims (Dkt. 39 at 5). Those convictions serve as the predicate offenses for the 18 U.S.C. § 922(g)(9) charges in Counts Five through Eight of the superseding indictment (Dkt. 39 at 5–6). The subsequent investigation also uncovered evidence that Thomas possessed firearms or ammunition on two prior occasions. On April 18, 2025, BIA officers found Thomas in a crashed vehicle with a .45-caliber handgun in the center console (*id.* at 9). During the first week of June 2025, Thomas also allegedly possessed a .45-caliber handgun while fishing with Zody at Billy Shaw Lake (*id.* at 9–10).

On September 9, 2025, the Government filed a superseding indictment adding Counts Five through Eight, each charging Thomas with unlawful possession of a firearm or ammunition after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. § 922(g)(9) on three separate occasions: Count Five charges possession of a .45-caliber handgun on April 18, 2025; Count Six charges possession of a .45-caliber handgun during the first week of June 2025; and Counts Seven and Eight charge possession of a 9mm handgun, a Remington Model 1100 shotgun, a Raven MP-25 .25-caliber handgun, and 9mm ammunition on June 16, 2025 (Dkt. 21 at 3–6).

## II. LEGAL STANDARD

Motions in limine are a "procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Like other pretrial motions, motions in limine are "useful tools to resolve issues which would otherwise

clutter up the trial." *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017). A motion in limine should not be used, however, to resolve factual disputes or weigh evidence. *C&E Servs., Inc. v. Ashland Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). Further, rulings on motions in limine are provisional and are "not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). As such, "a ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." *SQM N. Am. Corp.*, 866 F.3d at 1070; *see Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).

The exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 348 (1974). Under the exclusionary rule, "illegally seized evidence" cannot be used "against the search victim in a criminal trial." *Id.* at 350; *see also Wong Sun v. United States*, 371 U.S. 471, 484 (1963). "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). Further, evidence discovered through "exploitation of" an illegal search or seizure, must also be suppressed as "fruit of the poisonous tree." *Wong Sun*, 371 U.S. at 488.

## III. ANALYSIS

Thomas moves to suppress the firearm and ammunition found in his truck during a search incident to arrest on the grounds that officers lacked probable cause to arrest him for assaulting Zody (Dkt. 60 at 2). He also moves to bifurcate trial (Dkt. 61).[1] Separately, the Government timely

---

[1] Thomas initially moved to sever Counts Five and Six for a separate trial and to try Counts Seven and Eight in a second phase before the same jury, following trial on Counts One through Four (Dkt. 61). The Court subsequently asked whether a simpler structure—one trial, two phases,

filed its notice of intent (NOI) under Rule 404(b) seeking to admit six pieces of evidence as either inextricably intertwined or, alternatively, under Rule 404(b) (Dkt. 39). The Court addresses each motion in turn.

**A. Motion to Suppress**

The Fourth Amendment protects the right to be secure in one's person against unreasonable seizures. In a warrantless arrest, there must be probable cause indicating that a crime has been, or is being, committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). An arresting officer must have "reasonably trustworthy information sufficient to warrant a prudent person" to believe the suspect has committed a crime. *United States v. Butler*, 74 F.3d 916, 920 (9th Cir. 1996). Probable cause is evaluated in light of the totality of the circumstances known to the arresting officer at the time of the arrest, *Rohde v. City of Roseburg*, 137 F.3d 1142, 1144 (9th Cir. 1998), and "may be based on the collective knowledge of all the officers involved in the investigation," *United States v. Jensen*, 425 F.3d 698, 705 (9th Cir. 2005). The statements of a single witness, however, are insufficient to establish probable cause absent independent investigation or corroboration by other witnesses or surrounding circumstances. *Arpin v. Santa Clara Cnty. Transp. Agency*, 261 F.3d 912, 924–25 (9th Cir. 2001); *Hopkins v. Bonvicino*, 573 F.3d 752, 767 (9th Cir. 2009).

Thomas argues the Court should suppress the firearm and ammunition found in his truck during a search incident to arrest because Bacon did not have probable cause to arrest him (Dkt. 60 at 2). The Government responds that under the collective knowledge doctrine, Bacon had probable cause to arrest Thomas based on Guratosky's investigation and Bacon's observations at the residence (Dkt. 68 at 1–2). Thomas further argues that Zody's statements were insufficient to

---

and one jury—would suffice. Thomas agreed and modified his request accordingly, asking that Counts One through Four be tried in Phase One and Counts Five through Eight be tried together in Phase Two (Dkt. 70 at 30). The Court therefore addresses only the propriety of bifurcating the trial into two phases.

establish probable cause because the officers' investigation failed to corroborate her account (Dkt. 60 at 14).

**1. Collective Knowledge Doctrine**

The collective knowledge doctrine generally applies in two situations. *United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010). The first is when officers "are working together in an investigation but have not explicitly communicated the facts each has independently learned." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). The second is when an officer "with direct personal knowledge of *all* the facts necessary to give rise to . . . probable cause, directs or requests that another officer, not previously involved in the investigation, conduct a stop, search, or arrest." *Id.* at 1033.

The second scenario does not apply here. Thomas's arrest was not done at the command of another officer who had direct personal knowledge of all the facts necessary to establish probable cause. Rather, the Government contends that Guratosky's and Bacon's knowledge—aggregated together—provided Bacon with probable cause to arrest Thomas (Dkt. 68 at 9).

In the first collective knowledge situation, often "no single law enforcement officer knows all of the facts necessary to establish reasonable suspicion or probable cause, and thus aggregation of facts is required." *Ramirez*, 473 F.3d at 1032. Courts have been willing to "aggregate the facts known to each of the officers involved," when there has been at least some communication between them. *Id.*; *United States v. Del Vizo*, 918 F.2d 821, 826 (9th Cir. 1990). The doctrine seeks to "distinguish[] officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject." *Ramirez*, 473 F.3d at 1033 (quoting *United States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005)).

Here, considering all of the circumstances, the Court finds that at the time Thomas was arrested, Bacon and Guratosky had probable cause to believe that a crime had taken place and that Thomas had committed an offense.

On the evening of June 16, Guratosky received a dispatch regarding a report of active gunshots at a residence on the reservation, with Thomas identified as the suspect (Dkt. 60-1 at 1; Dkt. 68-1 at 1). Dispatch informed Guratosky that Zody and her mother, Dorothy Egan, were at the police station wanting to speak with an officer (Dkt. 68-1 at 1). While en route to the station, Guratosky called his supervisor, Bacon, and relayed that information (Dkt. 60-3 at 1). Bacon testified that during his phone call with Guratosky, he pulled up the dispatch call log and began reviewing the initial call.

Shortly thereafter, Guratosky arrived at the station, where Zody and Egan were waiting inside. Initially, Egan reported that Zody and Thomas were involved in a physical altercation; Thomas had a firearm; and he fired a shot that broke a car window in the front yard of Egan's house (Dkt. 60-1 at 1; Dkt. 68-3 at 1). Guratosky testified that Egan was essentially the only person communicating to him, which prompted him to ask who was actually reporting the crime. At that point, Zody stated that she was the victim. Dorothy then reported that Zody had an injury on her back (Dkt. 60-1 at 1). Guratosky testified that he inspected the wound and believed it to be some sort of puncture wound.

Guratosky then called Bacon to relay the updated information. During their phone call, Guratosky stated that he did not believe Zody had been shot "but may have been impacted by surrounding debris" (Dkt. 60-3 at 1). Bacon testified that he could hear Egan in the background stating that "he was throwing her, he choked her." After Guratosky informed Bacon that the wound on Zody's back was actively bleeding, Bacon instructed him to request EMS to evaluate her

injuries (Dkt. 60-3 at 1; Dkt. 68-2 at 1). Guratosky testified that he also relayed a description of Thomas's vehicle to Bacon.

Following the second phone call, Bacon responded to the Egan residence to look for Thomas[2] (Dkt. 60-3 at 1). Although he was not there, Bacon observed "broken glass and other debris around the vehicle" and "also noticed both windows were broken, one of which had what appeared to be a partial bullet hole" (Dkt. 68-2 at 1; Dkt. 68-5 at 1), but "did not observe any brass casings or blood indicating a shooting around the residence" (Dkt. 60-3 at 1). Bacon then cleared from the residence and began patrolling for Thomas's vehicle (*id.*).

Shortly thereafter, EMS evaluated Zody and requested Life Flight for a suspected gunshot wound on her upper back (Dkt. 60-3 at 1; Dkt. 60-1 at 1). Guratosky then called Bacon a final time to relay that information (Dkt. 68-2 at 2; Dkt. 60-3 at 3). Zody was life flighted to a hospital in Boise, Idaho, while Bacon continued to patrol for Thomas (Dkt. 60-3 at 1). Bacon subsequently located Thomas and arrested him (*id.* at 2–3).

The record is clear that at the time of Thomas's arrest, Bacon knew the following facts: there was a physical altercation between Thomas and Zody; a firearm was involved; Thomas allegedly fired the firearm, shattering a car window; Bacon observed a sedan in Egan's front yard with shattered windows and a circular impact in the driver's-side window that appeared to be from a gunshot; Zody had a "puncture wound" on her back that was actively bleeding; EMS advised the injury was possibly a gunshot wound; and Zody's injuries were severe enough to require her being life flighted to a nearby hospital for treatment. Although no single piece of information was necessarily sufficient to establish probable cause on its own, Guratosky and Bacon worked

---

2 Bacon also testified that he received a telephone call from Guratosky while investigating the Egan residence but did not answer it. The record does not clearly establish what information, if any, Guratosky intended to convey during that call.

together in a single investigation; communicated with one another throughout the investigation; and collectively possessed information corroborating both the occurrence of a shooting and Thomas's involvement in it. *See Ramirez*, 473 F.3d at 1032; *Del Vizo*, 918 F.2d at 826. Based on the totality of circumstances, the Court finds Bacon had probable cause to arrest Thomas.

**2. Zody's Statements**

Thomas nevertheless argues that the collective knowledge of the officers is insufficient to demonstrate probable cause because the officers' investigation failed to corroborate Zody's account (Dkt. 60 at 14). In support, he points to Bacon's initial report, in which Bacon stated that he "did not observe any brass casings or blood indicating a shooting around the residence" (Dkt. 60-3 at 1). According to Thomas, because Bacon's investigation failed to uncover additional physical evidence of a shooting, Zody's uncorroborated account cannot support a probable cause finding (Dkt. 60 at 14–15).

"[S]tatements from a witness, without further investigation by the police, are insufficient to support probable cause." *Hopkins*, 573 F.3d at 767. Rather, officers are required to "independently investigate" a crime victim's "knowledge or interview other witnesses." *Arpin*, 261 F.3d at 925. A victim's statements, however, can support a probable cause finding "if the victim provides facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 978 (9th Cir. 2003) (quotation omitted). In *Peng*, the Ninth Circuit examined whether law enforcement had probable to arrest based solely on the victim's allegations of a domestic violence assault. *Id.* Although the victim's account contained inconsistencies, the court held that those inconsistencies did not defeat probable cause because they concerned the sequence of events and were not material to whether a crime had occurred or who had committed it. *Id.* at 979. Such inconsistences, the court explained, "are to be expected where different people are called upon to

remember startling events." *Id.* The court further held that a factual dispute regarding a victim's account does not defeat probable cause when the "victim's statements are sufficiently definite" to establish that a crime occurred; and the complaint is "corroborated by either the surrounding circumstances or other witnesses." *Id.* Other courts have also found an officer's observation of a victim's injuries can corroborate the victim's statements. *See, e.g.*, *United States v. Filoialii*, No. 21-CR-00052, 2022 WL 18587675, at *10 (D. Alaska Oct. 18, 2022), *report and recommendation adopted*, No. 21-CR-00052, 2023 WL 371542 (D. Alaska Jan. 24, 2023); *United States v. Lowe*, No. 14-CR-00004, 2014 WL 5106053, at *6 (D. Nev. Oct. 10, 2014), *aff'd*, 676 F. App'x 728 (9th Cir. 2017).

Here, unlike in *Hopkins* and *Arpin*, the officers did not rely solely on Zody's statements. Although Bacon did not observe brass casings or blood, he did observe broken glass at the scene, including a vehicle window that appeared to have been broken in connection with the reported incident (Dkt. 60-3 at 1; Dkt. 68-2 at 1; Dkt. 68-5 at 1). More importantly, medical providers confirmed that Zody had suffered a gunshot wound to her back (Dkt. 60-3 at 1, 3), further corroborating her account. *See Filoialii*, 2022 WL 18587675, at *10. Thus, the officers did not simply accept Zody's account without investigation. And, as in *Peng*, Zody provided sufficiently definite information establishing that a crime occurred. Zody's statements to police were consistent: Thomas punched her, pulled out a firearm, and fired a shot that broke a car window in the yard (Dkt. 60 at 3; Dkt. 60-1 at 1), and she sustained an injury on her back but did not know the cause (Dkt. 60-3 at 1).

Thomas points to the FBI report as evidence that Zody gave inconsistent accounts, but that report does not establish an inconsistency in Zody's statements (Dkt. 60 at 13). The FBI agent who prepared the report did not interview Zody at the police station; rather, the report merely attributes

to Zody a statement that she had been shot in the stomach (Dkt. 60-2 at 1). By contrast, Guratosky, who actually interviewed Zody, testified that she did not confirm that she had been shot and did not know what caused the injury to her back (Dkt. 68-3 at 1). Thus, the purported inconsistency is not between two statements made by Zody, but between Guratosky's contemporaneous account of what Zody said and a third-party account of the same interview. The FBI report therefore does not establish that Zody herself gave inconsistent accounts. In any event, the officers did not need to resolve the location of Zody's injury before establishing probable cause. The relevant inquiry is whether, under the totality of the circumstances, the officers had reasonably trustworthy information sufficient to warrant a prudent person to believe Thomas had committed an assault. *Butler*, 74 F.3d at 920. Here, they did.

Accordingly, under the collective knowledge doctrine, the officers' investigation sufficiently corroborated the core facts of Zody's account to establish probable cause to arrest Thomas. His warrantless arrest did not violate the Fourth Amendment, and the evidence discovered during the search incident to that arrest is not subject to suppression. The Court therefore denies Thomas's motion to suppress.

**B. Bifurcation**

Thomas also moved to bifurcate trial—Counts One, Two, Three, and Four would be tried in Phase One, while Counts Five, Six, Seven, and Eight would be tried in Phase Two—all in front of one jury (Dkt. 70 at 30). The Government maintains that trying all counts together will not result in "clear, manifest or undue prejudice from [a] joint trial" (Dkt. 67 at 7) (quoting *United States v. Taren-Palma*, 997 F.2d 525, 532–33 (9th Cir. 1993)).

Rule 14 of the Federal Rules of Criminal Procedure provides that a district court may bifurcate or sever a criminal trial "[i]f the joinder of offenses . . . in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). "There is a high risk of undue

prejudice whenever joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)) (citation modified), *opinion amended on denial of reh'g*, 798 F.2d 1250 (9th Cir. 1986). This risk is particularly true in cases involving joinder of felon-in-possession charges with other unrelated felony charges. *United States v. Nguyen*, 88 F.3d 812, 815 (9th Cir. 1996); *Lewis*, 787 F.2d at 1321. Bifurcation of felon-in-possession charges from other counts is an approved procedure to reduce the prejudice inherent in the felon charge. *Nguyen*, 88 F.3d at 818; *United States v. Ward*, 18 F. App'x 502, 504 (9th Cir. 2001).

As the Court explained during the suppression hearing, the Court is concerned with the prejudicial effect of the jury learning that Thomas was prohibited from possessing firearms at the time of the alleged assault. Evidence regarding Thomas's prior domestic violence convictions would likely be excluded if he were charged only with Counts One through Four, as the prior convictions involved different, unrelated victims and no use of firearms. Likewise, evidence of Thomas's prior possession during the April 18, 2025, church crash would likely be inadmissible during Phase One. Allowing the jury to hear this evidence solely because Thomas is also charged with firearm-possession offenses therefore creates a substantial risk that the jury will use the evidence to infer that Thomas has a propensity for violence or firearm use.

Furthermore, considerations of judicial economy favor bifurcation. The same jury will hear all eight counts, just as it would if the counts were all tried together. The only difference here is that Thomas's prior convictions will not be made known to the jury until after they have reached a verdict with respect to the assault charges.

Therefore, the Court finds that bifurcation is necessary to prevent the jury from learning of evidence relevant only to the possession charges until after it has reached a verdict on the assault charges. Accordingly, the Court grants Thomas's motion to bifurcate.

### C. Rule 404(b) Evidence

The Government seeks to admit six pieces of evidence: three prior convictions for domestic violence involving different, unrelated victims; two prior instances of firearm possession; and two prior altercations between Zody and Thomas (Dkt. 39 at 1–2).

Rule 404(b)(1) of the Federal Rules of Evidence prohibits the admission of "other crimes, wrongs, or acts" when offered only to prove a defendant's propensity to commit the charged offense. Other act evidence is not subject to the rigors of Rule 404(b) if it is directly related to, or "inextricably intertwined" with, the charged offense. *United States v. Wells*, 879 F.3d 900, 928 (9th Cir. 2018); *see generally* Fed. R. Evid. 404. Otherwise admissible evidence may still be excluded if its probative value is substantially outweighed by a danger of unfair prejudice under Rule 403. *United States v. Haischer*, 780 F.3d 1277, 1281–82 (9th Cir. 2015); *United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012).

Because the trial will proceed in two phases, the Court addresses the admissibility of each piece of evidence separately as it relates to the assault charges in Phase One and the possession charges in Phase Two.

#### 1. Direct Evidence and Inextricably Intertwined Evidence

Other act evidence is inextricably intertwined with the charged crime either when (1) the evidence constitutes part of a transaction that serves as the basis for a criminal charge, or (2) the evidence is necessary to permit the Government to present a coherent and comprehensible story regarding the commission of the charged crime. *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012–13 (9th Cir. 1995). Evidence may be inextricably intertwined when it shares an "important

factual connection" with the charged crimes. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). It also includes evidence that establishes an ongoing relationship between the defendant and other actors in the case or to rebut a defendant's claims that they were unaware of the criminal conduct at issue. *See United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). There must, however, be a sufficient contextual or substantive connection between the proffered evidence and the charged crime to justify exempting the evidence from the strictures of Rule 404(b). *Vizcarra-Martinez*, 66 F.3d at 1013.

Here, the Government seeks to proceed under the coherent and comprehensive story scenario. The Government argues the following incidents are inextricably intertwined with the charged assaults and thus exempt from Rule 404(b): the Arrowhead Inn incident on February 25, 2025; the early June 2025 Billy Shaw Lake incident; and Thomas's crash into a church on April 18, 2025 (Dkt. 39 at 10, 12). As to the possession charges, the Government seeks to introduce evidence of the church crash and Billy Shaw Lake incident as charged conduct, and the prior domestic-violence convictions as evidence of an element of § 922(g)(9). Thomas responds that the Government cannot use unrelated acts of unlawful conduct to establish the charged offenses (Dkt. 70 at 16–19).

**a. Arrowhead Inn Incident**

On February 25, 2025, a BIA officer responded to the Arrowhead Inn regarding a report involving Thomas (Dkt. 39 at 8). Zody reported that Thomas had held her against her will, threatened to kill her, and fired a gun over her head near the TV tower by Sheep Creek Road (*id.* at 8–9). She described Thomas as intoxicated and under the influence of methamphetamine (*id.* at 9). She also reported that he forced her to use methamphetamine and that he was in possession of

three firearms (*id.*). A hotel clerk corroborated portions of Zody's account, including that Thomas attempted to enter the hotel while Zody hid in the bathroom (*id.*).

**Phase One**. The Government argues the Arrowhead Inn Incident is necessary to explain "the history of Thomas and Zody's short, eight-month, relationship" and how that relationship "regressed to the point of Thomas intentionally shooting Zody" (Dkt. 39 at 12). Thomas responds that the history of his relationship with Zody is not an element of any charged offense (Dkt. 70 at 16). The Government further contends the incident is necessary to demonstrate that an assault occurred because it informs the apprehension, or fear, that Zody experienced during the assault (Dkt. 73 at 4).

The Court agrees evidence related to the Arrowhead Inn incident is necessary to offer a coherent and comprehensible account of the assault charges. In *United States v. Varela*, No. R2100955001, 2022 WL 4494777, at *4 (D. Ariz. Sep. 28, 2022), the court considered whether an altercation between the defendant and victim which occurred less than a week before the charged assault was admissible as inextricably intertwined evidence. There, the government argued the prior incident was necessary to rebut any potential claims of self-defense and to provide insight into the defendant's relationship with the victim and the power and control dynamic. *Id.* The court held that the charged assault "did not occur in isolation" and that the proposed testimony provided relevant context on the parties' relationship and their history of domestic violence. *Id.* Accordingly, the court admitted the evidence as inextricably intertwined. *Id.*

Here, the Arrowhead Inn incident provides relevant context for understanding the relationship between Thomas and Zody and the circumstances surrounding the charged assaults. As in *Varela*, the incident involved the same parties and occurred only several months before the charged conduct. It also supports the Government's theory regarding an ongoing volatile

relationship between Thomas and Zody. Like *Varela*, the charged assault did not occur in isolation. The incident therefore shares a sufficient contextual and substantive connection with the charged assaults to be considered inextricably intertwined.

Furthermore, evidence that Thomas previously threatened Zody and displayed a firearm provides context for Zody's apprehension during the charged assaults and for the progression of the parties' relationship leading up to the charged conduct. Thomas is charged with assault, which the Ninth Circuit defines as either (1) "a willful attempt to inflict injury upon the person of another," or (2) "a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *United States v. Dupree*, 544 F.2d 1050, 1051–52 (9th Cir. 1976). Thus, the prior threat and display of a firearm bear directly on the circumstances giving rise to Zody's apprehension and provide context for the charged assaults. The Court therefore finds the Arrowhead Inn incident to be inextricably intertwined with the charged assault offenses and thus outside Rule 404(b)'s requirements. The Court's ruling, however, is limited to the portions of the incident necessary to provide that context—evidence concerning Thomas's alleged methamphetamine use, forced drug use, and Zody's forced confinement are not necessary to present a coherent and comprehensible account of the charged assaults.

**Phase Two**. Thomas's alleged possession during the Arrowhead Inn incident was not charged. Nor does the Government argue that it is inextricably intertwined with the possession charges. The Court therefore considers the admissibility of that evidence under Rule 404(b) below.

**b. Church Crash**

On April 18, 2025, BIA officers found a white Dodge Ram crashed against the entrance gate of a Presbyterian church (Dkt. 39 at 9). Thomas was in the driver's seat, and officers observed

a handgun on the center console and a half-empty bottle of whiskey within arm's reach (*id.*). After Thomas awoke, he told officers that he had been drinking and had an argument with Zody (*id.*). Officers reported that Thomas appeared intoxicated and that he refused to perform the standardized field sobriety tests or to provide a breath sample (*id.*). Thomas's possession of the handgun is charged in Count Five (*id.*).

**Phase One**. The Government argues the church crash is necessary to demonstrate "the volatile nature of their relationship" (Dkt. 39 at 12). It also maintains that "Thomas's possession of firearms during the relationship" is necessary to tell a "comprehensible story" regarding the June 16 assault (Dkt. 73 at 3). The Court disagrees.

To determine whether particular evidence is necessary to the Government's "coherent and comprehensible story," the Court asks whether the evidence bears directly on the charged crime. *Wells*, 879 F.3d at 928–29. Evidence bears directly upon the commission of a crime if it tends to prove that the defendant had the means to commit the charged crimes and that he was in fact the perpetrator. *Dorsey*, 677 F.3d at 952. In *Dorsey*, witnesses saw the defendant with a gun before the charged shooting, and the gun was the same or similar type as the gun used in the shooting. *Id.* The Ninth Circuit therefore found the evidence directly relevant because it tended to show that the defendant possessed a weapon consistent with the one used in the charged shooting, thereby linking him to the offense. *Id.*

Here, it is clear that the relationship between the June 16 assault and the church crash is too attenuated to support the introduction of the evidence during Phase One. First, Thomas's mere possession of a firearm in his center console following an argument with Zody has no bearing on the charged assault. Second, the firearm found in Thomas's truck is different from the firearms allegedly involved during the June 16 assault. Unlike in *Dorsey*, the church crash does not tend to

establish that Thomas had the means to commit the charged assaults or that he was the perpetrator. The only link between the two incidents is that Thomas told officers that he had an argument with Zody before leaving her residence and crashing his vehicle. That connection is insufficient to establish the contextual or substantive connection necessary to remove the church crash from the strictures of Rule 404(b).

**Phase Two**. Thomas concedes that the evidence showing the officer responding to the crash and finding him in the driver's seat with a handgun on the center console is admissible on Count Five as charged conduct (Dkt. 70 at 21). Because Thomas's possession of the handgun is the conduct charged in Count Five, that evidence is direct evidence of the charged offense rather than other-act evidence subject to Rule 404(b).

As to the remaining circumstances of the church crash, the Court defers ruling on their admissibility to the extent their relevance depends on issues arising at trial. The Court's preliminary observation, however, is that evidence concerning Thomas's uncharged conduct—including his alleged intoxication, consumption of alcohol, and refusal to perform field sobriety tests or provide a breath sample—is not necessary to establish the charged possession offense and is likely inadmissible as too prejudicial. The Court will address any remaining issues as necessary during Phase Two of trial.

**c. Billy Shaw Lake Incident**

During the first week of June 2025, Thomas and Zody were fishing at Billy Shaw Lake on the DVIR (Dkt. 39 at 9). Zody reported that Thomas became angry and pulled out a .45-caliber handgun (*id.*). She also reported that Thomas carried a .25-caliber derringer and a black 9mm Ruger handgun in his white Dodge Ram truck (*id.* at 9–10). During an argument, Thomas allegedly gave Zody the .45-caliber handgun and told her to shoot him (*id.* at 10). Thomas eventually left

Zody at the lake without a means of getting home (*id.*). Thomas is charged with the possession of the .45-caliber handgun in Count Six (*id.*).

**Phase One**. The Government argues the Billy Shaw Lake incident is necessary to explain "the history of Thomas and Zody's short, eight-month, relationship" and how that relationship "regressed to the point of Thomas intentionally shooting Zody" (Dkt. 39 at 12). It also argues the incident is necessary to present a comprehensible account of the charged offenses (*id.* at 10). Thomas responds that the history of his relationship with Zody is not an element of any charged offense (Dkt. 70 at 16).

The Court agrees that evidence concerning the Billy Shaw Lake incident provides relevant context for understanding the relationship between Thomas and Zody and the circumstances surrounding the charged assaults. As in *Varela*, the charged assaults did not occur in isolation. *See* 2022 WL 4494777, at *4. The Billy Shaw Lake incident occurred only weeks before the charged conduct and involved the same parties, an argument between them, and Thomas's display and possession of a firearm. The incident therefore provides context for the parties' relationship and the progression of their interactions leading up to the charged assaults.

Thomas also challenges the Government's characterization of Zody's statements concerning the .25-caliber derringer and black 9mm Ruger (Dkt. 70 at 25). Although the Government's notice (Dkt. 39) and the underlying FBI interview summary (Dkt. 39-11) state that Zody reported Thomas carried those firearms in his truck (Dkt. 39 at 9–10), Thomas contends the underlying recording does not connect either firearm to the Billy Shaw Lake incident (Dkt. 70 at 25). Rather, according to Thomas, Zody identified the .45-caliber handgun as the firearm Thomas had at Billy Shaw Lake and discussed the .25-caliber derringer and 9mm handgun separately, stating only that she had seen those firearms in Thomas's truck (*id.* at 25–26). He therefore argues

that the recording does not support a finding that either firearm was present at Billy Shaw Lake (*id.* at 25–26).

The Court need not resolve this factual dispute at this stage. As the Ninth Circuit explained in *Dorsey*, evidence is directly relevant where it tends to show that the defendant possessed a weapon consistent with the one used in the charged shooting, thereby linking him to the offense. 677 F.3d at 952. The Government's proffered evidence concerning the .25-caliber derringer and 9mm Ruger therefore provides a sufficient connection between the Billy Shaw Lake incident and the charged assault to treat that evidence as inextricably intertwined. The Court addresses the admissibility of this evidence under Rule 403 below.

Accordingly, the Court finds that the surrounding circumstances of the Billy Shaw Lake incident, including Zody's statements concerning the firearms Thomas carried in his truck, are inextricably intertwined with the charged assaults and therefore are not subject to Rule 404(b).

**Phase Two**. Thomas concedes that evidence showing he possessed the .45-caliber handgun at Billy Shaw Lake is admissible on Count Six but argues that the surrounding circumstances are not (Dkt. 70 at 24–26). Because Thomas's possession of the .45-caliber handgun is the conduct charged in Count Six, that evidence is direct evidence of the charged offense rather than other-act evidence subject to Rule 404(b).

As to the remaining circumstances of the Billy Shaw Lake incident, the Court defers ruling on their admissibility to the extent their relevance depends on issues arising at trial. The Court preliminarily observes, however, that evidence of Thomas's uncharged possession of the .25-caliber derringer pistol and black 9mm Ruger handgun is likely inadmissible, despite those calibers matching the firearms charged in Count Seven (firearms possessed during assault), because it is improper propensity evidence and unduly prejudicial. The Court likewise defers ruling on the

admissibility of the remaining surrounding circumstances, including the argument between Thomas and Zody; Thomas's alleged statement that Zody should shoot him; and his departure from the lake, until the Court can determine whether and for what purpose the evidence is offered during Phase Two of trial.

**d. Prior Domestic-Violence Convictions**

The Government seeks to introduce three prior convictions involving different domestic-violence victims, arising from incidents in 2002, 2006, and 2021, respectively (Dkt. 39 at 6–8). These prior domestic-violence convictions are different from the other evidence. They are not technically "inextricably intertwined" with the charged offenses because they do not form part of the transactions underlying the charges. Rather, in Phase Two, a prior conviction for a qualifying domestic-violence offense is itself an element of the offenses charged under 18 U.S.C. § 922(g)(9). Thus, the judgment and details regarding these events to the extent they demonstrate: (a) Thomas used force against the victim; and (b) they were in a qualifying domestic relationship at the time of the offense, are admissible as direct evidence of Counts Five through Eight—not other-act evidence subject to Rule 404(b).

The Court finds, however, that because each conviction is offered to establish the same element, that admitting all three would be cumulative. *See United States v. Breitkreutz*, 8 F.3d 688, 692 (9th Cir. 1993), *abrogated on other grounds by Old Chief v. United States*, 519 U.S. 172 (1997). In *Breitkreutz*, the Ninth Circuit held that once evidence of one of the defendant's prior felony convictions was placed into the record, "proof of the other two was cumulative and therefore likely to fail the Rule 403 test." *Id.* The Court will therefore permit the Government to introduce only one of the three convictions. The Government may select which conviction it wishes to introduce. The Court defers ruling on which facts surrounding the selected conviction may be

admitted and will address that issue as necessary based on the evidence the Government seeks to introduce at Phase Two of trial. The Court directs the parties to meet and confer regarding a stipulation concerning which conviction will be admitted and, if possible, the facts that may accompany the conviction.[3]

**2. Four-Prong Rule 404(b) Analysis**

To the extent the foregoing evidence is not inextricably intertwined with the charged offenses, the Court considers whether it is admissible for a permissible purpose under Rule 404(b).

Evidence of a prior crime, wrong, or incident that is otherwise inadmissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character" may be admitted if offered for a non-propensity purpose including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence is admissible under Rule 404(b) if the Government proves: (1) the evidence tends to prove a material point (materiality); (2) the prior act is not too remote in time (remoteness); (3) the evidence is sufficient to support a finding that the defendant committed the other act (sufficiency); and (4) in cases where knowledge and intent are at issue, that the act is similar to the offense charged (similarity). *United States v. Torres*, 824 F. App'x 467, 469 (9th Cir. 2020). To satisfy the first prong of this test, "the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013).

As discussed above, the Court has determined that portions of the Arrowhead Inn incident are inextricably intertwined with the assault charges; and that Thomas's prior convictions and

---

[3] The Court notes that Thomas proposed the following stipulation: "The parties stipulate that on April 8, 2003, the defendant was convicted of a misdemeanor crime of domestic violence as defined in 18 U.S.C. § 921(a)(33). The defendant knew and has known about this conviction since April 8, 2003" (Dkt. 70 at 9).

certain portions of the church crash and Billy Shaw Lake incident constitute direct evidence of the possession charges; and that certain other evidence is inextricably intertwined with the charged offenses. The Court therefore considers below whether the remaining portions of the Arrowhead Inn incident, the church crash, and Billy Shaw Lake incident satisfy Rule 404(b)'s four requirements, as well as whether any evidence of the prior convictions is admissible for a permissible purpose under Rule 404(b) in Phase One of trial.

**a. Arrowhead Inn Incident**

**Phase One**. The Court found above that the portions of the Arrowhead Inn incident concerning Thomas's prior threat against Zody, display of a firearm, and related conduct are inextricably intertwined with the charged assaults. The Government's alternative Rule 404(b) theories—knowledge, intent, motive, and absence of mistake or accident—pertain to those same portions of the incident, not to Thomas's alleged methamphetamine use, Zody's forced drug use, or other unrelated unlawful conduct (Dkt. 39 at 12, 15). Because the evidence relevant to those theories is inextricably intertwined with the charged offenses, the Court need not conduct a separate Rule 404(b) analysis. The remaining evidence is neither inextricably intertwined with the charged offenses nor offered for a permissible purpose under Rule 404(b). The Court therefore excludes that evidence from trial.

**Phase Two**. The Government seeks to offer evidence of Thomas's prior possession of a firearm during the Arrowhead Inn incident during Phase Two of trial to demonstrate knowledge (Dkt. 39 at 15). It contends that Thomas's prior possession shows that he knows about guns and how they operate, making it more likely that he possessed the firearms charted in Counts Five through Eight (*id.*). Thomas responds that there is no logical chain of inferences showing how

Thomas's prior possession of a firearm is relevant to show his knowledge that he possessed a gun during a different incident (Dkt. 70 at 14–15). The Court agrees.

To satisfy the relevance and similar prongs, the Government must show a "logical connection" between the defendant's knowledge obtained from commission of the prior acts and the knowledge at issue in the current case that is supported by some propensity-free chain of reasoning. *Ramos-Atondo*, 732 F.3d at 1123; *United States v. Jimenez-Chaidez*, 96 F.4th 1257, 1265 (9th Cir. 2024). In *Jimenez-Chaidez*, the Ninth Circuit explained that the defendant's prior acts of smuggling and the charged smuggling did not require propensity reasoning to establish knowledge and intent because the evidence focused on how the prior and charged smuggling occurred, thus demonstrating a pattern. 96 F.4th at 1265–66. The court noted, however, that it would be impermissible propensity evidence to use the prior drug smuggling to merely show that because defendant previously engaged in drug smuggling, he knew drugs were in his vehicle. *Id.* at 1265. Thus, the circumstances of the prior acts themselves supported an inference of knowledge, rather than "simply concluding that [defendant] knew he was smuggling drugs because he had done so in the past." *Id.* at 1266.

Here, the only logical inference between Thomas's possession during the Arrowhead Inn incident and the charged possessions is that Thomas knew he was possessing firearms "because he had done so in the past." *Id.* The Government identifies no circumstance surrounding Thomas's possession during the Arrowhead Inn incident that would support a propensity-free inference that he knowingly possessed the firearms charged in Counts Five through Eight. The mere fact that Thomas possessed firearms during an earlier, unrelated incident does not tend to show that he knew he possessed the firearms at issue here. Accordingly, the Arrowhead Inn evidence does not satisfy Rule 404(b)'s relevance requirement. Because the evidence fails to satisfy this threshold

requirement, it is inadmissible under Rule 404(b), and the Court need not consider the remaining requirements for admissibility. The Court therefore excludes the Arrowhead Inn incident from Phase Two.

#### b. Church Crash

**Phase One**. As discussed above, the church crash is not inextricably intertwined with the charged assaults. The Court therefore considers whether any portion of the incident is admissible under Rule 404(b). The Government seeks to introduce evidence of the church crash to demonstrate knowledge, intent, and absence of mistake or accident (Dkt. 39 at 15).

The Government first argues that evidence of Thomas's possession of a handgun during the church crash is admissible to rebut any claim that Thomas did not act knowingly or with intent, and to show that Thomas "commonly keeps a handgun in his possession" and "intended to keep it in his presence even following arguments with Zody" (*id.*; Dkt. 73 at 5). The Government also argues that Thomas's prior possession of a firearm demonstrates that he knows about guns and how they operate, making it less likely that he accidentally pulled the trigger during the charged assault (Dkt. 39 at 15). Thomas responds that the church crash did not involve violence; the firearm was different from the firearm used in the charged assault; and the firearm was found in the center console of a parked truck while its owner slept, with no evidence that Thomas handled, trained with, or fired the weapon (Dkt. 70 at 22–23). In Thomas's view, the Government's theory relies on the impermissible inference that a person who keeps guns nearby is more likely to intentionally shoot someone (*id.*).

The Court reaches the same conclusion here for substantially the same reasons discussed above with respect to the Arrowhead Inn incident. The Government's theory is that Thomas's prior possession of a firearm makes it more likely that he knowingly possessed and intentionally used a

firearm during the charged assault. But, as with the Arrowhead Inn incident, the Government identifies no circumstance surrounding the church crash that supports a propensity-free inference of knowledge or intent. The evidence instead requires the jury to infer that Thomas acted knowingly or intentionally during the charged assault because he had possessed a firearm on a prior occasion. That inference is impermissibly based on propensity. *See Jimenez-Chaidez*, 96 F.4th at 1266. The same is true of the Government's absence-of-mistake theory. The mere fact that Thomas previously possessed a firearm does not make it less likely that he accidentally discharged a firearm during the charged assault, particularly where the church crash involved no use or handling of a firearm. Accordingly, the church crash evidence does not satisfy Rule 404(b)'s requirements and is inadmissible during Phase One.

**Phase Two**. As discussed above, the Court defers ruling on the admissibility of the remaining circumstances of the church crash until Phase Two of trial. The Court will address the admissibility of that evidence as necessary based on the issues and theories that arise at trial.

**c. Billy Shaw Lake Incident**

**Phase One**. The Government also seeks to admit evidence of the Billy Shaw Lake incident to establish knowledge, intent, motive, and absence of mistake or accident (Dkt. 39 at 15; Dkt. 73 at 6). Because the Court already found that the Billy Shaw Lake incident is inextricably intertwined with the charged assaults, the Court does not consider whether the incident is admissible under Rule 404(b).

**Phase Two**. The Government contends Thomas's possession during the Billy Shaw Lake incident is admissible under Rule 404(b) to establish knowledge (Dkt. 39 at 15). As discussed above, evidence that Thomas possessed the .45-caliber handgun at Billy Shaw Lake is direct evidence of Count Six and is therefore not subject to Rule 404(b).

#### d. Prior Domestic-Violence Convictions

**Phase One**. The Government seeks to introduce three prior convictions to demonstrate knowledge, intent, motive, and absence of mistake (Dkt. 39 at 15). First, the Government contends that the prior convictions demonstrate Thomas's knowledge of his relationship with Zody (*id.*). But knowledge of Thomas's relationship with Zody is not an element of any charged offense, and the fact that Thomas previously had domestic relationships with other women does not tend to show that he knew he was in a domestic relationship with Zody. The Government therefore has not identified a permissible inference from the prior convictions to the knowledge at issue in this case.

The Government next argues the prior convictions demonstrate Thomas's intent to harm Zody and rebut any claim that he did not intend to do so (*id.*). Generally, an intent to assault is not transferable across "dissimilar and unique sets of circumstances." *United States v. Charley*, 1 F.4th 637, 648 (9th Cir. 2021); *see also United States v. Bettencourt*, 614 F.2d 214, 217 (9th Cir. 1980) ("A showing of intent to assault on an earlier occasion proves little, if anything, about an intent to assault at some later time."). In *Charley*, the Ninth Circuit considered the following factors in analyzing the transferability of intent to assault: the similarity of the circumstances; any pattern of violence precipitating the prior and charged conduct; similarity of the defenses asserted; and similarity of the victims. 1 F.4th at 649–50. No single factor is dispositive, but "[t]he greater [] the dissimilarity of the two offenses, the more tenuous is the relevance." *Id.* at 650 (quoting *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1109 (9th Cir. 1979)).

Here, the 2002 and 2006 convictions involved different victims, different circumstances, and no firearms. The Government identifies no factual similarity between those offenses and the charged assaults beyond the fact that the victims were domestic partners. That similarity, standing

alone, is insufficient to establish that Thomas's intent on those prior occasions bears on his intent during the charged assaults. Indeed, where a prior act involves a different victim, the Government must identify a "rational connection between the two occurrences" beyond the defendant's propensity for violence. *Bettencourt*, 614 F.2d at 217. The Government has not done so here. The Court therefore finds that the 2002 and 2006 convictions are inadmissible to prove intent.

The 2021 conviction presents a different question. Unlike the 2002 and 2006 convictions, the 2021 incident involved conduct that bears a factual similarity to the charged assaults: after assaulting the victim, Thomas allegedly attempted to place a kitchen knife in her hand (Dkt. 39 at 7). The Government argues that this conduct, together with the alleged events at Billy Shaw Lake and during the charged assault, establishes a "murder-suicide theme"[4] relevant to show Thomas's motive and intent (Dkt. 73 at 6).

"[P]rior bad act evidence is allowed to show motive only when motive is in turn relevant to establish an element of the offense that is a material issue." *United States v. Brown*, 880 F.2d 1012, 1014 (9th Cir. 1989). But "[t]he prior wrongful acts must establish a motive to commit the crime charged, not simply a propensity to engage in [violence]." *Id.* at 1015. If motive is not itself an element of the charged offenses, evidence offered to establish motive "may be offered to prove that the act was committed, or to prove the identity of the actor, or to prove the requisite mental

---

4 The term "murder-suicide" generally refers to a homicide followed by the perpetrator's suicide. Scott Eliason, *Murder-Suicide: A Review of the Recent Literature*, 37 J. Am. Acad. Psychiatry & L. 371, 371 (2009). The Government has not proffered evidence of a murder-suicide motive or intent. Rather, the record reflects a possible pattern of Thomas handing a weapon to a victim after an altercation and asking the victim to use it against him. Accordingly, the term "murder-suicide" does not describe the alleged pattern. The Court uses the term "murder-suicide theme" here only because the Government uses it to characterize the alleged pattern. The Court cautions the Government, however, against using the phrase in front of the jury because it carries an emotional connotation that is not supported by the proffered evidence.

state." *Id.* at 1014–15 (quoting 22 WRIGHT & GRAHAM'S FEDERAL PRACTICE & PROCEDURE: FEDERAL RULES OF EVIDENCE § 5240 (1978)).

Other acts of domestic violence involving the *same victim* are generally admissible under Rule 404(b) to prove intent, motive, or lack of accident. *United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020). This is because "prior (and subsequent) acts of violence towards *the identical victim* can shed light on the mindset of the defendant during the charged crime, such as whether there was a grudge between the two, a desire for payback of some sort, or that the defendant had the intent to exert control over this particular victim through violence." *Id.* (emphasis added). By contrast, where the prior act involved a different victim, the Government must identify a "sufficient factual relationship between the two incidents" beyond the defendant's propensity for violence. *United States v. Bowman*, 720 F.2d 1103, 1105 (9th Cir. 1983); *Bettencourt*, 614 F.2d at 217. Where there is "no evidence whatsoever" connecting the prior incident to the defendant's motive to assault the victim and the prior incident merely demonstrate the defendant's propensity for violence, it is inadmissible under Rule 404(b). *Charley*, 1 F.4th at 648; *see also Brown*, 880 F.2d at 1015.

Here, because motive is not an element of the charged assaults, the 2021 conviction must bear on whether the charged offense was committed, the identity of the actor, or the requisite mental state. *See Brown*, 880 F.2d at 1014–15. The Government's theory is that the 2021 conviction, together with the Billy Shaw Lake incident and the June 16 assault, demonstrate a recurring pattern from which the jury may infer Thomas's motive and intent during the charged assault. Because the 2021 conviction involved a different victim, the Court considers whether the Government has identified a sufficient factual connection to the charged assault to support that inference, rather than merely showing Thomas's propensity for violence.

It has not. There is not a common factual thread between the 2021 domestic violence conviction and the Billy Shaw Lake incident and June 16 assault that warrants the jury hearing the evidence in total before deciding if Thomas had the requisite intent to assault Zody. Those incidents involved the same victim, occurred within weeks of one another, and allegedly involved Thomas handing Zody a firearm and asking her to shoot him. The 2021 conviction, by contrast, occurred approximately four years earlier, involved a different victim, and involved a knife rather than a firearm. Thus, the Court finds the 2021 conviction is substantially removed from the relationship and circumstances that form the basis of the Government's alleged pattern with Zody.

Even accepting the Government's characterization of the 2021 conviction as relevant to Thomas's motive and intent, it would nevertheless be excluded under Rule 403. With the record currently before it, the Court finds that the 2021 conviction has minimal probative value as to Thomas's motive and intent at the time of the alleged crime. The Government has offered no evidence that Thomas intended to kill himself, and "[a] showing of intent to assault on an earlier occasion proves little, if anything, about an intent to assault at some later time." *Bettencourt*, 614 F.2d at 217. Moreover, the more recent Billy Shaw Lake incident provides a substantially stronger connection to the charged assault because it involved the same victim and the same alleged pattern of conduct, while the 2021 conviction involves a different victim and a materially different set of circumstances. Balanced against this minimal probative value is the substantial, perhaps inherent, prejudicial potential of such evidence for the jury. Even if carefully instructed, "jurors are likely to regard [evidence of a prior assault conviction] as proof of a defendant's turbulent character and to conclude that he acted consistently with that character at the time charged in the indictment." *Id.* at 218. Such evidence is also needlessly cumulative, as the Court has ruled that the Billy Shaw Lake incident is admissible.

Finally, the Government argues that the prior convictions are admissible to rebut a claim that Thomas accidentally discharged the firearm or acted in self-defense (Dkt. 39 at 15). It reasons that Thomas's history of violence toward domestic partners makes it less likely that he accidentally pulled the trigger during the charged assault (*id.*). This argument fares no better. None of the prior convictions involved a firearm, a shooting, or a claim of accident, mistake, or self-defense. The Government identifies no circumstance surrounding those offenses that would make an accidental discharge or act of self-defense during the charged assault less likely. Rather, the proposed inference is that because Thomas previously acted violently toward domestic partners, he was more likely to have intentionally shot Zody here. That is propensity reasoning, which Rule 404(b) does not permit. Accordingly, the prior convictions are inadmissible during Phase One of trial.

**Phase Two**. As discussed above, a prior conviction for a qualifying domestic-violence offense is an element of the offenses charged under 18 U.S.C. § 922(g)(9). Accordingly, the conviction selected by the Government is direct evidence of the possession charges and is not subject to Rule 404(b). The Court has determined, however, that only one of the three convictions may be admitted because evidence of the additional convictions would be cumulative. The Government may select which conviction it wishes to introduce. The Court defers ruling on which facts surrounding the selected conviction may be admitted and will address that issue as necessary during Phase Two of trial.

**3. Rule 403**

Evidence that meets the test under Rule 404(b) may still be excluded under Rule 403. *United States v. Martin*, 796 F.3d 1101, 1105 (9th Cir. 2015). Rule 403 allows the court to exclude evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *See also United States v. Preston*, 873 F.3d 829,

840 (9th Cir. 2017). Unfair prejudice is an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Anderson*, 741 F.3d 938, 950 (9th Cir. 2013) (quoting *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)). "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Hankey*, 203 F.3d at 1172.

**a. Arrowhead Inn Incident**

**Phase One**. Having found portions of the Arrowhead Inn incident concerning Thomas's prior threat against Zody, display of a firearm, and related conduct are inextricably intertwined with the charged assaults, the Court next considers whether those portions are admissible under Rule 403. Thomas argues Rule 403 weighs against admission of the allegations of Thomas's firearm possession;[5] discharge, threats, and the hotel clerk's statements (Dkt. 70 at 18–20).

First, Thomas contends that because the Government does not propose that any of the firearms mentioned in the report were the weapon used during the June 16 assault, the only inference from the prior possession is improper character (*id.* at 18). Similar to the Court's findings for Thomas's possession during the Billy Shaw Lake incident, evidence that Thomas possessed firearms matching the same caliber as those used in the assault is directly relevant because it tends to show that he possessed a firearm consistent with the one used in the charged shooting, thereby linking him to the offense. *See Dorsey*, 677 F.3d at 952. The Court notes, however, that it is unclear whether the Government intends to introduce evidence of Thomas's possession of the particular firearms identified in the BIA report. Unlike the Billy Shaw Lake incident, where the Government

---

[5] Although not contained in the body of the Government's Notice, Thomas also points out that in the underlying BIA report, Zody told officers that Thomas was in possession of three firearms: a .25-caliber pistol, a 9mm pistol, and a .45-caliber pistol (Dkt. 70 at 18; Dkt. 39-9 at 2).

included in its summary Zody's alleged statements about the firearms in Thomas's vehicle, it did not include similar statements in its summary of the Arrowhead Inn incident. Without knowing the form or purpose of this evidence, the Court cannot assess its probative value under Rule 403 outside the context of trial.

The Court reaches a different conclusion as to the portions of the Arrowhead Inn incident involving Thomas's threat against Zody, discharge of a firearm, and related conduct. Those events are closely connected to the charged assaults and provide context for the events giving rise to the charges. Although the evidence is undoubtedly prejudicial to Thomas, its probative value is substantial because it bears directly on the charged conduct and is not substantially outweighed by the danger of unfair prejudice. The Court therefore finds those portions admissible under Rule 403.

Thomas also challenges the admission of the hotel clerk's statements concerning the Arrowhead Inn incident (Dkt. 70 at 20). According to the BIA report, the clerk did not observe the alleged assaultive conduct (Dkt. 39-9 at 2–3). Instead, the clerk's observations concern Thomas's attempt to enter the hotel while Zody was in the bathroom; Thomas's apparent intoxication and agitation; the clerk's decision to lock the hotel's front door; and Thomas's subsequent departure (*id.* at 2–3). The Court has already excluded evidence concerning Thomas's alleged forced confinement of Zody and his alleged intoxication. The Government has not identified any independent relevance for the clerk's remaining observations. At most, the observations corroborate portions of Zody's account that are either excluded or otherwise cumulative. *See United States v. Ives*, 609 F.2d 930, 933 (9th Cir. 1979) (defining cumulative evidence as evidence that "replicates other admitted evidence"). The Court therefore excludes the hotel clerk's statements from the Government's case-in-chief. The Court's ruling does not preclude the

Government from seeking to use the statements for impeachment or other proper purposes if Zody's credibility is first placed at issue.

**Phase Two**. Because the Court has found the Arrowhead Inn incident inadmissible during Phase Two of trial, the Court need not conduct a Rule 403 analysis.

**b. Church Crash**

**Phase One**. The Court determined that the church crash is neither inextricably intertwined with the charged assaults nor admissible under Rule 404(b). No evidence from the church crash therefore reaches the Rule 403 analysis in Phase One.

**Phase Two**. The Court has determined that evidence showing officers responded to the church crash and found Thomas in the driver's seat with a handgun on the center console is direct evidence of Count Five. That evidence therefore remains subject to Rule 403, while the Court has deferred ruling on the admissibility of the remaining circumstances of the crash until trial.

**c. Billy Shaw Lake Incident**

**Phase One**. The Court finds that the probative value of the Billy Shaw Lake incident is substantial. The incident occurred only weeks before the charged assaults, involved the same victim, and involved an argument during which Thomas allegedly displayed and possessed a firearm. The incident therefore provides context for the relationship between Thomas and Zody and the circumstances leading to the charged assaults. *See Varela*, 2022 WL 4494777, at *4. The incident also bears a close factual relationship to the charged conduct because both incidents allegedly involved Thomas displaying a firearm during an argument with Zody.

Nor is the probative value outweighed by the risk of unfair prejudice. The evidence is undoubtedly prejudicial, but"[r]elevant evidence is inherently prejudicial." *Hankey*, 203 F.3d at 1172. The charged conduct itself is serious and highly prejudicial, and the Billy Shaw Lake

incident does not present a substantially different or more inflammatory risk of unfair prejudice. Given the incident's temporal and factual proximity to the charged assaults, the Court finds that its substantial probative value is not substantially outweighed by the danger of unfair prejudice.

The evidence concerning Thomas's alleged possession of the .25-caliber derringer and black 9mm Ruger presents a different question. Although the Court has found evidence sufficiently connected to the charged assaults to be considered inextricably intertwined, its probative value is minimal. Neither firearm is alleged to have been used in the charged assault, and the Government has not identified a distinct purpose for introducing evidence that Thomas possessed those firearms during the Billy Shaw Lake incident. At the same time, the evidence presents a substantial risk of unfair prejudice because the 9mm Ruger corresponds to the caliber of firearm used in the charged assault. The jury could therefore infer from Thomas's prior possession of a firearm of that caliber that he is the type of person who would possess or use the firearms involved in the charged assault—the very propensity inference Rule 404(b) is designed to prevent. *See* Fed. R. Evid. 404(b)(1). The Court therefore finds that the minimal probative value of the evidence concerning the .25-caliber derringer and black 9mm Ruger is substantially outweighed by the danger of unfair prejudice. The Court excludes that evidence under Rule 403.

**Phase Two**. The Court has determined that evidence showing Thomas possessed the .45-caliber handgun at Billy Shaw Lake is direct evidence of Count Six. That evidence therefore remains subject to Rule 403; the Court has deferred ruling on the admissibility of the remaining surrounding circumstances until Phase Two of trial.

#### d. Prior Domestic-Violence Convictions

**Phase One**. The Court has determined that the prior domestic-violence convictions are inadmissible under Rule 404(b). Because the convictions are excluded from Phase One, the Court need not conduct a Rule 403 balancing analysis.

**Phase Two**. The Court has determined that the Government may introduce one prior domestic-violence conviction as direct evidence of an element of Counts Five through Eight. That conviction remains subject to Rule 403, while the Court has deferred ruling on which facts surrounding the conviction may accompany it.

## IV. ORDER

For the reasons stated above, **IT IS ORDERED:**

1. Government's Notice of Intent to Admit "'Other Act' Evidence and Motion in Limine to Admit the Evidence (Dkt. 39) is **DENIED in part, GRANTED in part,** and **RESERVED in part**.

    a. The Government may admit a redacted version of one of Defendant's certified judgments of conviction and limited testimony regarding the conduct underlying that conviction as allowed by Rule 404(b), when relevant to its case-in-chief or its rebuttal case.

    b. If Rule 404(b) evidence is admitted, the Government shall provide the Court a proposed limiting instruction.

    c. The Court will address Defendant's other objections to Rule 404(b) evidence at trial.

2. Defendant's Motion to Suppress (Dkt. 60) is **DENIED**.

3. Defendant's Motion to Sever Counts Five and Six and Bifurcate Counts Seven and Eight (Dkt. 61) is **GRANTED in part** and **DENIED in part**. Trial shall proceed as follows:

a. Phase One of trial shall consist of Counts One, Two, Three, and Four.

b. Following the return of a jury verdict on Counts One, Two, Three, and Four, Phase Two shall immediately commence and consist of Counts Five, Six, Seven, and Eight.

**DATED:** September 08, 2026

Amanda K. Brailsford

**Amanda K. Brailsford**
U.S. District Court Judge